The next case on our calendar is United States v. Fuller, numbers 17, 35, 37. Good morning, Erin McCampbell-Parris on behalf of Appellant Robert Alan Fullen, may it please the Court. This Court should vacate the judgment and remand for resentencing for three reasons. First, the sentence imposed was substantively unreasonable under this Court's prior rulings in the Duvee and Jenkins cases. Second, the District Court imposed two special conditions of release that are constitutionally infirm on their face. And third, the final order of forfeiture violates the plain text of Rule 32.2. With respect to my first point, the substantively unreasonable nature of the sentence, the District Court imposed a 97-month term of incarceration on Mr. Fuller. This sentence was ratcheted up to that point nearly fourfold from what would have been his original base-level offense, had the enhancements that are found under Guideline — Isn't there an appeal waiver that covers this issue? I believe there's not. What happened with this case is that at his plea, Mr. Fuller waived his right to appeal. His first appointed counsel for this appeal filed an honors brief. The government moved for summary affirmance simply stating that the judgment should be The appeal presented no non-frivolous issues. The government did not ask this Court to enforce the appellate waiver. And there is no case in this circuit that says that that's okay. And I've — Is there any — I mean, in the context of an Anders brief, when the government supports the brief, do you have any support for the contention that that actually has been held to be a waiver by the government? I do outside the circuit. If you look at the case I provided in my reply brief, United States v. Calderon, out of the Tenth Circuit, in that case, the same thing happened, which is that the defense counsel filed an Anders brief, and the government filed a letter to the court stating that the court should affirm because there are no non-frivolous issues. The government in that letter did not ask for an affirmance or any other relief. And in that case, the Tenth Circuit said that the government had waived its right to make its waiver argument. It's hard to see why the government is waiving when it's — it's really — it's pushing on an open door. There's no — there's no adversariness when you have an Anders motion. I mean, the government should make an independent review, and if there's an issue, candidly raise it. But I don't see how they waive the issue, the — raise — rely on the appeal waiver when the Anders motion is dealing with lots of different things, including things that may not be waived at all. It could be restitution. It could be supervised release. What I would say here is that the government filed a submission to this court asking for a specific remedy based on a specific rationale or a specific reason. It was not the appellate waiver. It was that there were no non-frivolous issues. So for that reason, they've waived their right to make the waiver argument at this point. They first raised waiver in their opening — or, excuse me, their responsive brief on the merits. That was their second submission to this court. Sotomayor, so it has been raised here. Yes. It's been raised, but I feel that that does not — I don't mean to derail the rest of your argument. It's fine. But I wanted to summarize. I don't think that that is a barrier to us raising the merits at this point. Now, with respect to the merits, I would argue that the 97-month term of incarceration is substantively unreasonable. In United States v. Dorvey, this court ruled — or, excuse me, instructed district judges to make very detailed, fact-specific findings with respect to the Guideline 2.2 — sorry, 2G2.2 enhancements for possession of child pornography, because those enhancements are, as this court said, eccentric, not based on the empirical studies or the expertise of the commission, and can easily generate unreasonable results. But here, when the district court enumerated how it calculated the offense level, it seemed to me that, unlike in Dorvey and other — many other child pornography possession cases, there was less duplication. Often there's a lot about computer use and numbers of images and so on. Here, there was prepubescent minors, sadomasochistic abuse, computer use, more than 600 images. That brought it up, with the exception of responsibility, to 28. Those don't seem to me repetitive and, like, double-counting in the way that Dorvey and other cases do. Do you think they are? I do. I mean, those were the four enhancements that are at issue, and those are the four that apply to child possession — stand-alone possession counts, not possession distribution or production. And here, if you look at it, if you look at what was later said in the Jenkins case, the two-level enhancement for computer use occurs in 95 percent of cases. The two-level increase for prepubescent minors occurs in 95 percent of cases. The other two, sadomasochistic abuse, is 84.5. But the fact that they're common still doesn't suggest that it's kind of a double-counting, which was part of, I thought, what the Dorvey analysis was. And the cases that have caused us most concern are cases that have resulted in sentences of 60 years and 70 years. This was 97 months for substantial possession and sadomasochistic abuse, you know, depicted in the material that your client had. So I don't see the same kind of substantive concerns as we've expressed elsewhere. What am I missing? The first thing I want to address is the fact that Dorvey dealt with the statutory maximum, whereas this case does not. And if you look at the final two paragraphs of Dorvey, the court encourages the district courts to vary from guidelines-range sentences when these four enhancements are applicable. And it says that it should use the full force of its discretion, including giving sentences that are non-custodial sentences up through the statutory maximum. So what I look at that section of the opinion to mean is that this opinion applies to all cases, not just those at the very high, high end. And if you look at the statistics in the Jenkins case, there the court made clear that in stand-alone counts of possession like this one, the median is 57 months. The maximum is typically 97, or the high, excuse me. Jenkins concerned 240 months and 25 years supervised release. Yes, and I get that. But if you look at towards the end of the opinion, they talk about what is the norm or what is the average in cases like this, stand-alone possession. And the median is 57 months and the high is 97. So my client, for his type of charge, falls within what is the highest of the high. Let me ask you about the terms of supervised release that you challenge also since time is passing. Is there any hardship to Mr. Fuller of postponing review of those conditions until it's closer to the time that they would actually be put into place? And we have a practice in some cases starting in Ballon, I believe, of treating those challenges as unripe, even though we might have significant concerns about them because the technology keeps changing and so on. Is there any hardship that your client would sustain if we were to do that in this case? Yes. Well, one, I think there's no real public interest in maintaining an unconstitutional condition and holding off litigation of that to a later matter when we're here today in front of this court. But more importantly, in his case, it doesn't just deal with technology, which would maybe arguably fall into this ripeness argument. But the condition articulated at sentencing said that he could not access any websites that included matching people together for personal, sorry. Human contact. Yeah. Or anything else. It's the or anything else language that takes us outside the context of a technology case or solely a technology case. It's the type of thing that the day he comes out of prison, he would be unable to attend an AA meeting or unable to go to a singles night at a bar. Because if you look at that language, it's so overly broad that it would bar him from doing that type of conduct. So I think it's important for this court to address this now. Why would it prejudice him to live with the conditions until he's ready to get out of jail and they would bite? Because these conditions are not tailored to his specific crime. If it was going to prohibit him from having interactions with children or from using the internet to access sites that children frequent or to communicate with children. On the merits, I certainly hear you. The question is why, going back to Judge Carney's question, is why wouldn't we wait on this until such time as, now I grant you that this is not a matter of technology and therefore that's not going to change. It's just the technology may change by which these prohibitions would be implemented. But why not take it all up at once when he's ready to get out of prison? I think that that argument lends some credence to the second condition I challenged, which is condition number eight, which is the continuous monitoring of his electronic devices. But with respect to this first condition, I mean, he's going to have trouble even getting access to news or anything. And quite frankly, even in prison would have a difficult time being a part of the modern society because our modern world, the public forum, is the internet through computer usage. He won't be supervised in prison except under the prison regime. So this doesn't apply in prison, as far as I can see. Again, I think that it was important for us to address it since we're here today and not to defer on it to another date. And I do think that it's sufficiently distinguished from those technology type cases that it would make sense to address it in this opinion. So you don't think it's moot at this point? I don't. I don't. And I don't think there's a public interest in keeping something that is constitutionally infirm on the books. I cited to a case from the D.C. Circuit for that proposition. All right. Fine. I think you have two minutes for rebuttal. We'll hear from Mr. Nitze. Mr. Nitze. Good morning, Your Honors. May it please the Court, Sam Nitze for the United States. The government respectfully submits that the sentence imposed by the district court should be affirmed in all respects for the reasons set forth in our papers. If I could start just briefly with the waiver argument since it came up. The Calderon case cited in the reply brief addressed a situation where, as Judge Jacobs, you referenced, an Anders brief was filed. The government did not decline to submit a brief of any sort, and the court dismissed the appeal as frivolous, essentially granted the Anders motion. And so there was no government filing of any sort one way or the other in that instance. And the court said where the government utterly fails to raise waiver, they have waived the waiver argument really saying because the Anders submission by the defendant referenced the appeal waiver and used that as a basis for dismissing the appeal, the court said we're not going to rely on waiver when you have raised it, but the government has said nothing. I think that kind of cuts the other way. I mean, you filed a brief here saying, yes, you know, the Anders brief is right, that there's, you know, striking all of the potential grounds endorsing that position, but you failed to mention waiver. We hold defendants to a fairly strict standard on waiver. Why, and it would be useful to us to have an appellate waiver pointed out at the earliest possible moment. Why shouldn't we hold you to that standard? There's no case or rule that the government is aware of holding that an issue that might be raised by motion is then forfeited and can't be raised later in the merits brief. In fact, the Calderon decision, bless you, the Tenth Circuit case references a previous Tenth Circuit case that says the government isn't required to raise waiver in by motion. It can raise it in its merits brief. Calderon addressed the situation where there was, at the point that the court resolved the case, no reference to waiver by the government. There's nothing in Rule 27. There's no case. There's no ---- It might be more efficient for the government to have raised it in this case at that point. At the point at which the government often files its motion for dismissal based on waiver, it has yet to see any arguments yet advanced by the appellant. And so there are arguments that can be raised that fall outside the scope of an appeal waiver. That's the case here. There are arguments that are raised. And so in the interest of efficiency, the government sort of prophylactically sometimes will move for dismissal, and then that has the effect of conditioning the matters brought by the appellant because they see the appeal waiver. And in this case, we would have been spared, had we raised waiver at that time, perhaps we would have been spared the effort of the in the alternative argument reaching the merits on substantive reasonableness. And it's a fair point that Your Honor raised. I think it is a fair point to say that there's no occasion to raise the issue of waiver when the defendant is not raising the issue of a right to appeal because the defendant has just filed a brief saying we're not appealing. I think that does not really respond to Judge Kearney's observation that it would be pretty helpful for the government to point out that a waiver exists when we are looking at an Anders brief. You're getting no resistance from me on that point. I understand Your Honor's point. And in this, there's nothing in the record to reflect, and I'm not certain why, the appeal waiver was not raised in that motion. But as a matter of law and as a matter of how the doctrine works and as a matter of what the government is entitled to rely upon with respect to the bargain agreed to in the plea agreement, we have not forfeited the waiver argument, leaving aside the point Your Honor raises. To state it in a capsule, the defendant has not waived the right to file an Anders brief. The defendant has not waived the right to file an Anders brief, which basically says I'm not appealing, when all he has waived is the right to appeal. He's not waived the right to an Anders brief? Correct. Yeah. My understanding is in the Tenth Circuit, there's a requirement to enforce a plea agreement, and that might, in Calderon, have been a reason that the court ruled the way it did. Can you speak to that? As I understand it, and I'm not sure I have this exactly right, but there was the Tenth Circuit grappled with this question, and then at one point they modified their local rule to include a basis for a motion to specifically state that one of the motions available is a motion to dismiss on the basis of an appeal waiver. And it was in the interest of court efficiency, government efficiency, but also for the court, I think maybe going to the point that Judges Jacobs and Carney have just raised. But I don't believe there is a rule in the Tenth Circuit, and in fact, the case relied on a motion done by Calderon, which is Calderon cites to a case that's Clayton. It's United States v. Clayton, 416F3-1236, and there the court says nothing in Rule 27.2 provides that a contention that can be raised by motion must be raised by motion on pain of forfeiture, and they even say that the government gains, there's an efficiency gain for the government certainly in not having to argue the merits of an issue when it's been waived, obviously, but that the government, by foregoing some of that benefit, in other words, finding itself in the situation we are in here, having argued waiver but also addressing the merits, that we have given up some of it doesn't mean we give up all of it. I don't know if I've answered your question directly, Judge Park, but I think so. In any event, with respect to the substantive reasonableness of the sentence, to follow up a bit on the Dorvey and Jenkins point, the instruction, the concern animating Dorvey is not that these guidelines enhancements should never apply or can never apply or that a court should not incorporate them into a guidelines range. Rather, it's that the district court must take care that there can be circumstances in which a possession offender has enhancements added to the district court's to the offense level that in some instances appear to apply as a matter of course. That can result in a guidelines range approaching the statutory maximum, and where you have a defendant, as in Dorvey and Jenkins, where that results in a sentence near the statutory maximum, where the offender and the offense conduct, the characteristics of the defendant are such that there's no real concern about abuse of children, where there is, it really is just a possession offense that you can end up with a sentence that is out of pace with or out of step with the conduct. And you can sort of have, it can distort sentences. There's, this case is nothing like that on any level of the concern in Dorvey. We're nowhere near the statutory maximum. Judge Kogan at the district court addressed Dorvey expressly and carefully. You have, he recognized that these enhancements must be treated with caution. If anything, the guidelines calculation was quite conservative. There was a four-level enhancement for abuse of a minor that the court declined to apply, although he credited Mr. Fuller's daughter's testimony about sexual abuse. He said it was unclear whether she was 17 or 18 at the time. Her testimony relied in part on whether there was snow on the ground and there was a birthday, and so in an exercise of caution, I guess you could say, the court did not apply that enhancement, although he said he would consider it in 3553A. And then here, he applies the guidelines range, a range that was stipulated to in the plea agreement, and then carefully went through the 3553A factors, and it would be hard. Sotomayor, could you briefly address the constitutionality of a condition that prevents him from accessing the Internet for establishing personal relationships? I don't mean personal relationships with children, but I mean any personal relationships. Yes, Your Honor. So first off, there was a comment or a phrase used by the district court orally at sentencing that said, or anything else. It's the oral, it's the oral pronouncement that governs. It's the oral pronouncement that governs, but it may be clarified by the written judgment. And to the extent the written judgment clarifies rather than contradicts the oral judgment. And here, I think the only fair reading of Judge Kogan's statement there is that he is focused on computer contact, Internet contact. And so he says, accessing websites that permit this kind of contact or anything else. What kind of contact? This is direct, this is direct, real-time communication with other human beings. Now, Your Honor's raised, so I wanted to address that point because that. I mean, there are adult human beings and then there are children human beings. Yes. And so this Court has affirmed in Johnson a total computer Internet ban and held that to be a permissible restriction, given the particular characteristics in Johnson. And this defendant easily qualifies for such a ban. And the reason. This is a possession case, right? It's a possession case, but the Court is permitted to fashion a sentence, required to fashion a sentence that takes into account the nature of the offense, but also the history and characteristics of the defendant and the risk posed to the public, the need for deterrence and protection of the public. This is a defendant who used a computer not just to possess pornographic child pornography, but also to trade it, also to communicate with another adult in Australia for the purposes of arranging a trip for child exploitation, a person who conned his way into a U.S. Army veteran's home, and within two weeks of living in that person's home, having talked his way in by lying about his own, making up his own status as a veteran, had loaded child pornography onto that veteran's computer, an adult computer. That person wasn't charged, but because it was assumed and understood that this was Mr. Fuller's content on his computer. You can imagine a scenario where that's not so clear, where some other adult is brought into the world of Mr. Fuller in a way that presents risk. It's a person who was found to have sexually abused his daughter. It's a person who had 25 border crossings in the last five years. Sotomayor, it's unclear whether his daughter was a minor. I mean, it's not approved conduct in any event. Well, that's the point, Your Honor. We don't know whether his daughter was a minor. We don't. And I'm addressing Your Honor's question about why, how the breadth of this provision can stand, and so I think it's relevant to the district court that there was sexual abuse, which is criminal conduct, whether she's minor or not, of an adult. And same thing with this Army veteran. He talks his way into his house and downloads pornography there. He travels. He's been to Ukraine 25 times over the last five years to a farm that he says he owns where there are naked children in lingerie. He indicated in the PSR indicates at paragraph 84 that he received certifications in data systems management and computer technology from Hewlett Packard, Apple, Digital Equipment Corporation. He was described by the district court as a liar and grifter of epic proportions, undeterrable, remorseless. If you take all of those factors into consideration, against the backdrop of Johnson, in which this court held that a total computer ban was proper because he had computer savvy, technical savvy that might permit him to evade monitoring, you have here the level of abuse, the level of deceit, the lack of remorse, the real risk posed to victims, youthful and not. It is surely within the district court's broad discretion for a period of supervision, which, again, is this. What is your position actually about the ripeness question, about whether we should adjudicate the constitutionality of the contours of the conditions that were pronounced by the court now or whether doing so closer to the time of his release to supervised religion is both better jurisdictionally as well as for other reasons? The government's position is that it would be prudent to dismiss the appeal on ripeness grounds, not to reach these questions and to leave open the possibility that remains open under the code, but for the defendant and or the government to move in the district court to reconsider these conditions at a time closer to release. And if we identified a condition that we believed was clearly unconstitutional, that would be suitable, though, to – I mean, we would have jurisdiction to adjudicate that right now, right, even if we didn't address every last jot and tittle, right, with the conditions? If you're at – if you decide that the issue is not ripe for review, then I don't think that makes – that the court would then be in a position to adjudicate the constitutional issue. As a prudential matter, it also, to the extent it's not ripe for review, to grapple with what are surely at least challenging constitutional questions now on a record that does not include the technology that will exist at the time the defendant is released that also would probably not be in the best interest of the court. But the government's relying in part on Randazzo, which, as you know, and as we cited in our papers, it really dealt with identical – two of those provisions are all but identical to those at issue here and was sent back. I'm way over time. Yes. One last quick question about forfeiture. The government does agree that remand for correction of the record with regard to forfeiture of electronic devices is required, is that right? We agree that remand for the clerical correction of the written judgment. But the notice issue, we think, is not a problem. Okay. Thank you very much. Thank you. Ms. Parris, you have two minutes. I just have a few points that I want to respond to. The first is – and I guess I'll go in reverse order – is that I do think this is ripe to be heard now. This Court asked us to brief these issues. We're here now. If we had not briefed the issue of the conditions at this point, I think we'd be subject to a potential waiver argument down the line. And I think my client is subject to a condition, the dating websites or anything else, that is beyond technology and takes us out of the realm of cases like Randazza. And Randazza itself was an appeal solely of the conditions. It was not an appeal tethered to the substantial reasonableness of a term of incarceration. So I think those things take us out of the realm of the Randazza case. Well, I'm sorry, but why does that – why does Randazza not permit us or even require us, if we want to be consistent, to put the supervised release terms aside and adjudicate the substantive reasonableness of the rest of the sentence? Because I – Can't we bifurcate? I think we have, prior to that case, a history in this Court of appeals to the terms of incarceration and the conditions all at one time. I believe Jenkins was the same thing, and that was held to be appropriate. Randazza is slightly different in that the defendant did not challenge a term of incarceration. He simply challenged the conditions. So if I was here just challenging the conditions and not the term of incarceration, I think I would probably be subject to this Randazza argument. But I think that we're allowed to proceed on the merits because we have that distinction. With respect to the substantive reasonableness of the sentence, I just want to reiterate that the Dorvey case itself said it was not limited to or isolated to cases of very high sentences or sentences that are the statutory maximum. And in the Jenkins case, if you look at what was considered to be a high sentence for the average of possession charges, 97 months, that's exactly what our client got here. With respect to waiver, there is no precise case from this circuit on that issue, but as I pointed to the Calderon case, in that case, the government did submit a letter. They didn't submit a brief, they didn't submit a motion, but they did submit a letter saying that there were no non-frivolous issues, which in essence is what happened here, only it was submitted in the vehicle or the form of a motion. So for that reason, I believe that the government has waived its waiver argument. Thank you very much. I think you have the arguments argued, and we'll take the matter under advisement.